[Cite as *State v. Cawthorne*, 2024-Ohio-2258.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                                     :

    Plaintiff-Appellee,                     :

                             No. 112795

    v.                                      :

STEAVEN CAWTHORNE,                                 :

    Defendant-Appellant.                    :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** June 13, 2024

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-21-665282-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Anna M. Faraglia and Eric Collins, Assistant Prosecuting Attorneys, *for appellee.*

Edward M. Heindel, *for appellant.*

KATHLEEN ANN KEOUGH, A.J.:

{¶ 1} Five days into a jury trial for the brutal killing of his girlfriend, Gina Lampton, defendant-appellant, Steaven Cawthorne, requested a plea agreement from the state. He agreed to plead guilty to Count 1, aggravated murder and the attendant firearm specifications, and the trial court sentenced him to 33 years to life in prison.

Cawthorne now appeals, contending that he did not enter a knowing, intelligent, and voluntary plea because (1) he did not separately plead guilty to the firearm specification attendant to the aggravated murder charge; (2) the trial court incorrectly stated the maximum fine for the aggravated murder offense; and (3) the trial court recited his Crim.R. 11 trial rights in one run-on sentence. For the reasons that follow, we find that Cawthorne entered a valid plea and his convictions are affirmed.

{¶ 2} Because a "guilty plea involves a waiver of constitutional rights, a defendant's decision to enter a plea must be knowing, intelligent, and voluntary." *State v. Dangler*, 162 Ohio St.3d 1, 2020-Ohio-2765, 164 N.E.3d 286, ¶ 10, citing *Parke v. Raley*, 506 U.S. 20, 28-29, 113 S.Ct. 517, 121 L.Ed.2d 391 (1992); *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, ¶ 25. "If the plea was not made knowingly, intelligently, and voluntarily, enforcement of that plea is unconstitutional." *Id.*

{¶ 3} The underlying purpose of Crim.R. 11 is to convey certain information to a defendant so they can make a voluntary and intelligent decision regarding whether to plead guilty. *State v. Ballard*, 66 Ohio St.2d 473, 479-480, 423 N.E.2d 115 (1981). The Ohio Supreme Court has stated:

> [O]ur focus in reviewing pleas has not been on whether the trial judge has "[incanted] the precise verbiage" of the rule, *State v. Stewart*, 51 Ohio St.2d 86, 92, 364 N.E.2d 1163 (1977), but on whether the dialogue between the court and the defendant demonstrates that the defendant understood the consequences of his plea, *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, ¶ 15-16; *Clark* at ¶ 26; *State v. Miller*, 159 Ohio St.3d 447, 2020-Ohio-1420, 151 N.E.3d 617, ¶ 19.

*Dangler* at ¶ 12. With these principles in mind, we turn to the merits of the appeal.

**{¶ 4}** Cawthorne first contends that his plea is invalid because he did not separately plead guilty to the firearm specification attendant to the aggravated murder offense as required under Crim.R. 11(C)(3). He supports his contention with the first paragraph of Crim.R. 11(C)(3), which states:

> With respect to aggravated murder committed on or after January 1, 1974, the defendant *shall plead separately to the charge and to each specification, if any.* A plea of guilty or no contest to the charge waives the defendant's right to a jury trial, and before accepting a plea of guilty or no contest the court shall so advise the defendant and determine that the defendant understands the consequences of the plea.

(Emphasis added.) According to Cawthorne, under this paragraph, he was required to plead guilty to the aggravated murder offense, and then separately plead guilty to the firearm specification; otherwise his plea was invalid.

**{¶ 5}** In *State v. Cramer*, 8th Dist. Cuyahoga No. 111509, 2023-Ohio-308, this court addressed this exact issue under the same factual scenario. In *Cramer*, the defendant was charged with multiple offenses, including noncapital aggravated murder with attendant one- and three-year firearm specifications. As part of the plea agreement, the defendant agreed to plead guilty to aggravated murder and the attendant three-year firearm specification. The *Cramer* Court noted that "[a]t the plea hearing, the trial court did not require [the defendant] to plead separately to the charges and the specifications." *Id.* at ¶ 21. Nevertheless, it held that the trial court substantially complied with Crim.R. 11(C)(3)'s requirement that "the defendant shall plead separately to the charge and to each specification, if any,"

because the court advised the defendant during the plea hearing, "[p]enalty wise, you'll be pleading guilty to aggravated murder *and* a 3-year firearm specification in Count 1." (Emphasis sic.) *Id*. at ¶ 22.

{¶ 6} Despite the holding in *Cramer* that the trial court had to and substantially complied with Crim.R. 11(C)(3), this court disagrees with Cawthorne's contention that in this case, the trial court was required to follow Crim.R. 11(C)(3) and accept a separate plea to the firearm specification. Because Cawthorne was not charged with capital aggravated murder, i.e., the grand jury did not charge him with a death specification under R.C. 2929.04, Crim.R. 11(C)(3) does not apply.

{¶ 7} The first paragraph of Crim.R. 11(C)(3) cannot be read in isolation but must be considered in total to be harmonious.

> (3) With respect to aggravated murder committed on and after January 1, 1974, the defendant shall plead separately to the charge and to each specification, if any. A plea of guilty or no contest to the charge waives the defendant's right to a jury trial, and before accepting a plea of guilty or no contest the court shall so advise the defendant and determine that the defendant understands the consequences of the plea.
>
> If the indictment contains no specification, and a plea of guilty or no contest to the charge is accepted, the court shall impose the sentence provided by law.
>
> If the indictment contains one or more specifications, and a plea of guilty or no contest to the charge is accepted, the court may dismiss the specifications and impose sentence accordingly, in the interests of justice.
>
> If the indictment contains one or more specifications that are not dismissed upon acceptance of a plea of guilty or no contest to the charge, or if pleas of guilty or no contest to both the charge and one or more specifications are accepted, a court composed of three judges shall: (a) determine whether the offense was aggravated murder or a

lesser offense; and (b) if the offense is determined to have been a lesser offense, impose sentence accordingly; or (c) if the offense is determined to have been aggravated murder, proceed as provided by law to determine the presence or absence of the specified aggravating circumstances and of mitigating circumstances, and impose sentence accordingly.

{¶ 8} Although the plain language of the first paragraph of Crim.R. 11(C)(3) requires the defendant to plead "separately to [aggravated murder] and to each specification, if any," we find that when (C)(3) is read in total, it is clear that the "specification" referenced is a capital specification. To read it otherwise would require a trial court that did not dismiss "the specifications * * * in the interests of justice" to empanel three judges to determine whether the defendant actually committed aggravated murder. It seems nonsensical that the state would offer a defendant the opportunity to plead guilty to noncapital aggravated murder with a firearm specification, but risk that a subsequent three-judge panel would find him guilty of a lesser offense.

{¶ 9} Our conclusion is supported by case law where the defendant pled guilty to aggravated murder and attendant death specifications, requiring the trial court to comply with Crim.R. 11(C)(3). *See State v. Belton*, 149 Ohio St.3d 165, 2016-Ohio-1581, 74 N.E.3d 319, ¶ 51 (process for entering a plea of guilty to charges of aggravated murder and related capital specifications is set forth in R.C. 2945.06 and Crim.R. 11(C)(3)); *State v. Ketterer*, 111 Ohio St.3d 70, 2006-Ohio-5283, 855 N.E.2d 48, ¶ 93 (when the offense charged is a capital offense, R.C. 2945.06 and Crim.R. 11(C)(3) require the state to prove guilt of an aggravated-murder charge

with death specifications even when an accused pleads guilty); *State v. Green*, 81 Ohio St.3d 100, 103, 689 N.E.2d 556 (1998) (Crim.R. 11(C)(3) allows the trial court, at its discretion, to dismiss death-penalty specifications following a plea to aggravated murder); *State v. Parker*, 95 Ohio St.3d 524, 2002-Ohio-2833, 769 N.E.2d 846 (appellee pled guilty to aggravated murder with a death-penalty specification; therefore, under R.C. 2945.06 and Crim.R. 11(C)(3), regardless of the state's agreement that it would not seek the death penalty, appellee was still charged with an offense that was punishable with death); *State v. Kelley*, 8th Dist. Cuyahoga No. 87324, 2006-Ohio-5432 (Crim.R. 11(C)(3) implicated; three-judge panel required to take testimony even though state indicated it would not recommend capital punishment but the defendant still pleaded guilty to aggravated murder with a death specification).

{¶ 10} When a death specification is not charged in the indictment with the aggravated murder charge or when the state dismisses the death specification in a plea agreement, Crim.R. 11(C)(3) is not implicated. *See State v. Reynolds*, 8th Dist. Cuyahoga No. 98146, 2012-Ohio-4067 (defendant never charged with a violence specification; he was charged with aggravated murder with a gun specification; it was never charged as a capital offense. R.C. 2945.06 and Crim.R. 11(C)(3) are therefore not applicable herein, and there was no need for a three-judge panel); *State v. West*, 9th Dist. Lorain No. 04CA008554, 2005-Ohio-990 (Crim.R. 11(C)(3) and R.C. 2945.06 not implicated when all capital specifications were dismissed; appellant pleaded guilty to murder, felonious assault, kidnapping, and aggravated

burglary); *State v. Thomson*, 6th Dist. Lucas No. L-05-1213, 2006-Ohio-1224, ¶ 44-45 (R.C. 2945.06 and Crim.R. 11(C)(3) are inapplicable where appellant pled guilty only to aggravated murder with a firearm specification and to aggravated robbery).

{¶ 11} In this case, Cawthorne was not charged with capital aggravated murder, i.e., the grand jury did not charge him with a death specification; thus Crim.R. 11(C)(3) was not implicated. Accordingly, the lack of a "separate" guilty plea to the firearm specification does not invalidate Cawthorne's guilty plea because when he pleaded "guilty" to Count 1, his plea included both the aggravated murder offense and the firearm specification.

{¶ 12} Because we find that the mandates of Crim.R. 11(C)(3) were not required, the trial court was required to follow Crim.R. 11(C)(2) before accepting Cawthorne's guilty plea. Those requirements include:

> (a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.
>
> (b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.
>
> (c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

Crim.R. 11(C)(2).

{¶ 13} We find that the trial court complied with Crim.R. 11(C)(2)(a)-(b) when it informed Cawthorne that pleading guilty to Count 1, as indicted, would result in a life sentence with additional time for the firearm specification. Specifically, the court stated:

> It's a life sentence. Sentence is life. Then depending on what I hear as a Judge, I heard evidence here, I'll also hear from both parties regarding sentencing, there are guidelines that I follow, according to the law and the State of Ohio, and then I make a ruling, whether it's 20, 25, 30 years or life without parole, as the underlying opportunity for you to then be before a Parole Authority. * * * The gun specs merge, the one[-] and three-year gun specs, by law they run consecutive to that 20, 25 or 30. So that where [the prosecutor] and your lawyers have discussed the 23, 28, and 33 years. * * * So do you understand that you're accepting your responsibility to aggravated murder, as indicted, with the one- and three-year firearm specification and the sentence that I outlined for you?

(Tr. 15-16). Cawthorne responded, "Yes your honor." *Id.*

{¶ 14} After additional dialogue with Cawthorne about his citizenship, education level, any medications, holds, warrants, or other government supervision, whether any promises or threats were made to him to change his plea, and his satisfaction with his attorneys, the following exchange occurred:

> TRIAL COURT: So, Mr. Cawthorne, on Case 665282, sir, how do you now plead to the one count as indicted in Count 1, the aggravated murder, unspecified felony, again, with the sentence of life in prison with parole opportunities based on the one[-] and three-year gun specs. That's 23, 25 — 23, 28, 33 years or life without parole. Sir, how do you plead to that count at this time; guilty or not guilty?
>
> CAWTHORNE: Guilty, your Honor.
>
> TRIAL COURT: I'll accept your plea of guilty and find you guilty with respect to the Count as indicted. Counts 2 through 5 will be dismissed at this time.

(Tr. 21-22.)

{¶ 15} Based on the foregoing, this court finds that the trial court complied with Crim.R. 11(C)(2)(a)-(b) because the record is clear that Cawthorne understood the "other 'nonconstitutional' aspects of the plea colloquy" — nature of the charges, the maximum penalties involved, and the effect of his guilty pleas, i.e., he knew his guilty plea was to both the aggravated murder offense and the attendant firearm specification. Accordingly, in order to invalidate his plea, Cawthorne must affirmatively show prejudice — "whether the plea would have otherwise been made." *Dangler* at ¶ 14, 16.

{¶ 16} We find that Cawthorne has not demonstrated any prejudicial effect such that he would not have otherwise entered into this plea agreement. During the middle of trial, Cawthorne requested a plea agreement from the state. This, alone, demonstrates that he voluntarily entered his guilty plea. And based on the entirety of the record, we find that he also entered a knowing and intelligent plea of guilty to Count 1, aggravated murder and the attendant firearm specification.

{¶ 17} Cawthorne next challenges the validity of his plea based on the trial court's misadvisement of the maximum fine. The right to be informed at the plea hearing of the maximum possible penalty that could be imposed upon conviction is a nonconstitutional right. *State v. Jones*, 8th Dist. Cuyahoga No. 94607, 2011-Ohio-1918, ¶ 6, citing *State v. Stewart*, 51 Ohio St.2d 86, 93, 364 N.E.2d 1163 (1977). Because the trial court did not completely fail to advise Cawthorne of the maximum penalty as required under Crim.R. 11, Cawthorne must demonstrate that he was

prejudiced by the trial court's misadvisement. *Dangler* at ¶ 16. We find that he has not done so.

**{¶ 18}** Although the trial court incorrectly advised Cawthorne that the maximum fine was $20,000 when it is actually $25,000, the court declared him indigent and waived all costs and fines. Accordingly, he has suffered no prejudice and thus the error is harmless. *State v. Simmons*, 8th Dist. Cuyahoga Nos. 99513 and 100552, 2013-Ohio-5026, ¶ 7 (trial court's incorrect advisement of the maximum fine does not render a plea invalid when the trial court waives or does not impose a fine).

**{¶ 19}** Cawthorne's final challenge to the validity of his plea pertains to the trial court's alleged lack of meaningful dialogue with him prior to accepting his plea. He contends that the trial court's run-on advisement of his Crim.R. 11(C)(2)(c) rights, without pausing or stopping to ensure understanding, renders his plea invalid. In support he cites *State v. Ballard*, 66 Ohio St.2d 473, 423 N.E.2d 115 (1981).

**{¶ 20}** In *Ballard*, the Ohio Supreme Court explained, "[T]he best method of informing a defendant of his constitutional rights is to use the language contained in Crim.R. 11(C), stopping after each right and asking the defendant whether he understands the right and knows that he is waiving it by pleading guilty. We strongly recommend such procedure to our trial courts." *Id.* at 479. However, the court stated that a trial court's failure to apply this procedure "will not necessarily invalidate a plea." *Id.*

**{¶ 21}** Our review of the record reveals that the trial fully complied with advising Cawthorne of his constitutional rights as required under Crim.R. 11(C)(2)(c)

and thus no error was made. Although the court did not pause to ensure understanding after each individual right, the court explained in an effective way how Cawthorne was waiving or giving up the constitutional rights that he possessed and was exercising at this stage of the proceedings by pleading guilty. Those rights included, (1) the state's burden of proof that "you've heard me read to the jury a number of times," (2) that he opted for a jury trial that was currently in progress, (3) that the state had called two witnesses, and he had been exercising his right to cross-examine those witnesses and would continue to do so if trial continued, (4) his ability to present evidence and subpoena witnesses, and (5) his right to remain silent. (Tr. 13-15.) Cawthorne affirmed that he understood these rights that he would be waiving by entering into a plea agreement. *Id.*

{¶ 22} Regarding potential penalties, we find that the trial court complied with Crim.R. 11(C)(2)(a), or if a misadvisement was made, it was harmless. The record reveals that Cawthorne understood that he was pleading guilty to an offense that carried a maximum penalty of life in prison, but that he could be eligible for parole after serving the mandatory minimum and the three-year firearm specification, for a total 23, 28, or 33 years. (Tr. 15-16.) Based on the record before this court, including that Cawthorne requested and accepted a plea agreement five days into a jury trial, we find that he entered a knowing, intelligent, and voluntary plea to the aggravated murder offense. He has not demonstrated error or prejudice to warrant reversal of his plea. The assignment of error is overruled.

{¶ 23} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

KATHLEEN ANN KEOUGH, ADMINISTRATIVE JUDGE

MICHELLE J. SHEEHAN, J., and
MICHAEL JOHN RYAN, J., CONCUR